**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 16-21449-CIV-MARTINEZ-GOODMAN**

JEAN EDNER LAMOUR and all others
similarly situated under 29 U.S.C. § 216(b),

       Plaintiff,

                                       **FLSA COLLECTIVE ACTION**

vs.

UBER TECHNOLOGIES, INC., a Delaware
corporation,

       Defendant.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S RENEWED MOTION (D.E. 75) TO COMPEL**
**ARBITRATION AND STRIKE CLASS ACTION ALLEGATIONS**



Plaintiff JEAN EDNER LAMOUR ("Plaintiff"), by and through undersigned counsel, files this response to Defendant UBER TECHNOLOGIES, INC.'s ("Uber") *Renewed Motion* (D.E. 75) *to Compel Arbitration and Strike Class Action Allegations* ("Renewed Motion"), in which Uber sought such relief in addition to dismissing the current action. In support, Plaintiff states as follows:

<u>**Introduction**</u>

This is a Fair Labor Standards Act ("FLSA")[1] case whereby Plaintiff seeks collective (not class) relief individually and on behalf of all others similarly situated. Factually, this case arises out of Uber's misclassification of its drivers as independent contractors rather than employees, and, *inter alia*, Plaintiff seeks to recover minimum wage, overtime pay, and reimbursement of expenses.

Uber's Renewed Motion seeks to dismiss this action, compel arbitration of Plaintiff's claims, and strike Plaintiff's collective action allegations (which Uber mistakenly refers to as "class action allegations"). In support, Uber introduces a deficient Declaration from an employee of Uber, Michael Colman ("Colman") [D.E. 75-1]. Colman's Declaration attaches several irrelevant and inadmissible documents and two purported agreements between Plaintiff and an entity called Rasier, LLC. The first agreement is attached as Exhibit "C" to Colman's Declaration, bears a date of June 21, 2014 at the bottom of each page, and is titled "Rasier Software Sublicense & Online Services Agreement" (hereinafter, the "June 2014 Agreement"). The second is attached as Exhibit "D" to Colman's Declaration, says "Last update: November 10, 2014" at the top of the first page, and bears a different title - "Software License and Online Services Agreement" (hereinafter, the "November 2014 Agreement") (collectively, the November 2014 Agreement and the June 2014 Agreement may be referred to herein as the "Rasier Agreements").

Both Rasier Agreements contain arbitration provisions that appear to be similar. Yet, the agreements are **not** the same. Despite this fact, Uber fails to identify under which agreement Uber seeks relief.[2] Based on this shortcoming alone, the Court should deny Uber's motion. *See*

---

[1] The FLSA is codified at 29 U.S.C. § 201 *et seq.*

[2] Colman's declaration, which attaches and discusses the Rasier Agreements, is riddled with inconsistencies and shortcomings. For example, it fails to identify the specific agreement under which Uber seeks relief. This deficiency is highlighted by Uber's assertion in its Renewed Motion that Plaintiff agreed to the June 2014 Agreement, subsequently agreed to the November 2014 Agreement, and then **later agreed again** on the same day to **both** agreements in **2016**. Quoting



*Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325 (11th Cir. 2016). Nevertheless, even if the Court could correctly guess under which agreement Uber is attempting to seek relief, Uber's motion would still have to be denied on the merits because **the delegation clause and other arbitration provisions Uber cites in its motion are illegal, invalid, and of no force or effect**; and thus, they do not bind Plaintiff and the putative collective action members to their terms.

The delegation clause and other arbitration provisions fail because their enforcement would violate both the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.*, ("NLRA") and the Norris-LaGuardia Act, 29 U.S.C. § 101 *et seq.* Further, the delegation clause is unenforceable because it is not clear and unmistakable, and both it and the arbitration provisions are procedurally and substantively unconscionable. Moreover, the existence of an opt out clause does not make legal the otherwise illegal delegation and arbitration provisions in Uber's agreements.

Through its Renewed Motion, Uber seeks to interfere with its drivers' collective pursuit of their statutory rights, including full freedom of association to collectively seek redress for the wrongs Uber has visited upon them. As will be seen, Uber cannot accomplish this without running afoul of the NLRA and other established law. Drivers must be able to purposefully and collectively avail themselves of the judicial system; the Federal Arbitration Act, 9 U.S.C. § 1 et. seq. ("FAA") cannot wrongfully frustrate that goal. Accordingly, and as set forth more fully below, Uber's motion must be denied.[3]

---

the character of Polonius in Shakespeare's *Hamlet*, Eastern District of Pennsylvania Judge Baylson exposed one of Uber's litigation strategies: to "[b]y indirection find directions out." *Razak v. Uber Technologies, Inc.*, 2016 WL 3960556, *3 (E.D. Pa. 2016) (slip copy) (denying Uber's motions to compel arbitration and stay action). Here, that strategy is on full display. Specifically, by the "indirection" of failing to identify under which agreement Uber seeks to arbitrate, Uber improperly hopes to find direction from the Court as to which agreement, if any, is applicable in this case; as if to say 'Judge, we do not know which agreement is in effect, but we think it must be one of these two agreements, so please figure it out for us.' Months ago, Uber's counsel did inform Plaintiff's counsel in an email that Plaintiff purportedly accepted the November 2014 Agreement. Seemingly, Uber's counsel did so to satisfy its meet-and-confer requirements with respect to the present motion. However, Uber fails to display the same confidence in its Renewed Motion.

[3] Uber suggests that because Plaintiff has moved to conditionally certify a collective action of Uber drivers who did not timely opt out of the arbitration provisions in their applicable service agreements, he concedes that he must arbitrate his claims. That argument is untenable, and commits the logical fallacy of denying the antecedent. It is true that if Plaintiff had availed himself of the arbitration opt out mechanism described in the Rasier Agreements (a mechanism which, as discussed *infra*, is itself illegal under the NLRA), he would not have to arbitrate his claims. However, that does not require a conclusion that a failure to opt out of arbitration mandates that



*Lamour v. Uber – Opp. to Renewed Motion to Compel Arb.*
Case No.: 16-21449-CIV-MARTINEZ-GOODMAN
Page 4

## An Introductory Post-Script

A critical issue at this stage of the proceedings – indeed, the issue that comprises the majority of Plaintiff's opposition to Uber's Renewed Motion – is whether the collective action waiver set forth in the Rasier Agreements' arbitration clauses is unenforceable because it violates the NLRA and the Norris LaGuardia Act. For the reasons set forth herein, it is clear that the answer is yes, the collective action waiver is unenforceable. Before proceeding to explain in detail why it is unenforceable, however, it would be prudent to first dispense with one of Uber's arguments related to *who* – the Court or an arbitrator – should make that determination.

Despite the fact that Uber states in its Renewed Motion that "the parties expressly delegated threshold issues[] related to the enforceability and validity of the arbitration agreement, *to the arbitrator*" (Renewed Motion at 2) (emphasis in original) and spends some time arguing this point at pages 10-12 of its Renewed Motion, and despite the ***further*** fact that Uber asks **this Court** to strike Plaintiff's collective claims, the Eleventh Circuit has ruled that an issue such as the enforceability of the collective action waiver may be decided by a court rather than an arbitrator. Indeed, in *Jenkins v. First American Cash Advance of Georgia, LLC*, 400 F.3d 868 (11th Cir. 2005), the Court determined:

> The class action waiver was a provision included in each of the Arbitration Agreements. …[T]his claim alleges the Arbitration Agreements specifically are unconscionable because they preclude class action relief. Under section four of the FAA, a federal court may adjudicate this claim because it applies to the Arbitration Agreements themselves, and thus, it places the making of the Arbitration Agreements in issue. *See* 9 U.S.C. § 4 (2000).

*Id*. at 877.

As explained *infra*, if the collective action waiver fails, the Rasier Agreements' purported arbitration provisions also fail. Accordingly, this Court, **not an arbitrator** should decide whether the collective action waiver is enforceable. The Court need not take Plaintiff's word for it, though. Rather, the Court need look no further than Uber's own words. In a similar case against Uber pending in the Middle District of Florida (wherein Uber is represented by the same lawyers), *Marc v. Uber Technologies, Inc., et al.*, Case No. 2:16-cv-00579-UA-MRM, the same issue as here between Uber and Plaintiff is being litigated, and the same arbitration and collective action waiver

---

Plaintiff's claims must be arbitrated. As is evident from the arguments set forth herein, there are many reasons that Plaintiff's claims are not subject to arbitration.



RICHMAN GREER
MIAMI · WEST PALM BEACH

provisions are at issue.  However, through the same counsel of record, Uber presently takes a wholly inconsistent position.  Uber tells the Middle District in the *Marc* case that "the existence of a valid agreement to arbitrate rests on the enforceability of the class action waiver contained therein" and (citing *Jenkins*) "whether the class action waiver contained in the Arbitration Provision is enforceable… is **a decision for the Court** …."[4]

The Federal Court system is not an all-you-can-claim buffet.   *Jenkins* supports the conclusion that the Court should rule upon the enforceability of the collective action waiver.  By asserting and relying upon that proposition in *Marc*, Uber's counsel is bound to it.

### Relevant Provisions of the Rasier Agreements

The Rasier Agreements, which are solely between Plaintiff and Rasier, LLC (which is referred to in the Rasier Agreements as the "Company"), are outrageously obtuse and legalistic. The inconsistencies and ambiguities are numerous.  While the arbitration provisions vary slightly, the following provisions appear in both agreements:

- "This arbitration provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis pursuant to the terms of the Agreement unless you choose to opt out of the arbitration provision.  This provision will preclude you from bringing any class, collective, or representative action against the Company or Uber.  It also precludes you from participating in or recovering relief under any current or future class, collective, or representative action brought against the Company or Uber by someone else."  (June 2014 Agreement at pg. 11; November 2014 Agreement at section 15.3.[5])
- "This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et. seq. … and evidences a transaction involving commerce."  (June 2014 Agreement at pg. 12; November 2014 Agreement at section 15.3.)
- "The Arbitrator shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error."  (June 2014 Agreement at pg. 15; November 2014 Agreement at section 15.3(vii).) (Hereinafter, the "Appeal-the-Arbitration-Award Clause".)
- "Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration.  This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and

---

[4] See *Defendant's Reply in Support of their Motion to Compel Individual Arbitration and Strike Class Action Allegations*, which is D.E. 17 in *Marc v. Uber Technologies, Inc., et al.*, Case No. 2:16-cv-00579-UA-MRM, at p. 2 (attached as **Exhibit "A"** hereto).  Plaintiff respectfully asks the Court to take judicial notice of the fact that Uber filed said reply in the *Marc* case and to review and consider Uber's statements and positions therein with respect to this issue.
[5] The November 2014 Agreement does not have page numbers.



not by way of court or jury trial, or by way of class, collective, or representative action."
(June 2014 Agreement at pg. 12; November 2014 Agreement at section 15.3(i).)

- Immediately below the above language, the Rasier Agreements state: "Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge."[6]  (June 2014 Agreement at pg. 12; November 2014 Agreement at section 15.3(i).)

- "You and the Company agree to resolve any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis. The Arbitrator shall have no authority to consider or resolve any claim or issue any relief on any basis other than an individual basis.  If at any point this provision is determined to be unenforceable, the parties agree that this provision shall not be severable, unless it is determined that the Arbitration may still proceed on an individual basis only."  (June 2014 Agreement at pg. 14; November 2014 Agreement at section 15.3(v).)

- "This Agreement is intended to require arbitration of every claim or dispute that ***lawfully*** can be arbitrated, except for those claims and disputes which by the terms of this Agreement are expressly excluded from the Arbitration Provision."  (June 2014 Agreement at pg. 13; November 2014 Agreement at section 15.3(i) (emphasis added).)

- "The disputes and claims set forth below shall not be subject to arbitration and the requirement to arbitrate set forth in this Arbitration Provision shall not apply: Claims for workers compensation…" (June 2014 Agreement at pg. 13; November 2014 Agreement at section 15.3(ii).) (Hereinafter, the "Workers Compensation Exception".)[7]

---

[6] This is what Uber describes in its Renewed Motion as a "delegation provision." Curiously, although the language immediately preceding this provision appears in bold in the Rasier Agreements, Uber de-emphasized the so-called delegation provision by ensuring that it did not appear in bold text.

[7] The Rasier Agreements do not define or otherwise explain the term "workers compensation". Moreover, there is no reference to a statute, a judicial or administrative opinion, or anything else that would inform Uber's drivers what is meant by "workers compensation".  Section 440.01, Florida Statutes, states that Chapter 400, Florida Statutes, "may be cited as the "Workers' Compensation Law".  *Id.*  The Supreme Court of California has referred in opinions to the "Workers' Compensation Act" (*see Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 807, 14 P.3d 234, 241 (2001); *see also Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 165, 729 P.2d 743, 753 (1987)); and California Labor Code Section 3200 declares in relevant part the California Legislature's "intent that the term 'workmen's compensation' shall… also be known as 'worker's compensation….'" *Id.*  Nevertheless, the Rasier Agreements leave the term "workers compensation" uncapitalized and without an apostrophe.  Thus, this term is ambiguous; in the mind of an unsophisticated driver such as Plaintiff, "workers compensation" could reasonably be interpreted as what the worker is compensated – *i.e.*, what the driver gets paid – and a driver such as Plaintiff might reasonably believe that any such related claims are excluded from arbitration.  Moreover, such an ambiguity would have to be interpreted against Uber as the drafting party.  This is especially true in light of the fact that Uber continues to assert that drivers are independent contractors even though under both California and Florida law, independent



*Lamour v. Uber – Opp. to Renewed Motion to Compel Arb.*
Case No.: 16-21449-CIV-MARTINEZ-GOODMAN
Page 7

- "A party may apply to a court of competent jurisdiction for temporary or preliminary injunction relief in connection with an arbitrable controversy…." (June 2014 Agreement at pg. 14; November 2014 Agreement at section 15.3(iv).) (Hereinafter, the "Court-Injunction Exception".)

- "Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law (i.e., a party prevails on a claim that provides for the award of reasonable attorney fees to the prevailing party).  In all cases where required by law, the Company will pay the Arbitrator's and arbitration fees.  If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned equally between the Parties or as otherwise required by applicable law." (June 2014 Agreement at pg. 14; November 2014 Agreement at section 15.3(vi).)

- "If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying the Company in writing of your desire to opt out of this Arbitration Provision, either by (1) sending, within 30 days of the date this Agreement is executed by you, electronic mail to optout@uber.com, stating your name and intent to opt out of the Arbitration Provision or (2) by sending a letter by U.S. Mail, or by nationally recognized delivery service…, or by hand delivery….  Should you not opt out of this Arbitration Provision within the 30-day period, you and the Company shall be bound by the terms of this Arbitration Provision." (June 2014 Agreement at pg. 15; November 2014 Agreement at section 15.3(viii)).

- "The parties expressly agree that Uber is an intended third-party beneficiary of this Arbitration Provision." (June 2014 Agreement at pg. 13; November 2014 Agreement at section 15.3(i).)

Finally, despite the above language identifying Uber as an intended third-party beneficiary of the Raiser Agreements' arbitration provisions, the November 2014 Agreement contains language contradicting that very statement.  Specifically, the agreement provides at section 14.6: "**No Third Party Beneficiaries.**  There are no third party beneficiaries to this Agreement.  Nothing contained in this Agreement is intended to or shall be interpreted to create any third-party beneficiary claims."[8]

---

contractors are not entitled to Workers' Compensation.  *See S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 349, 769 P.2d 399, 403 (1989) ("The Worker's Compensation Act… extends only to injuries suffered by an 'employee,'" which term "do[es] not include independent contractors"; *see also* Chapter 440, Florida Statues (providing that "[e]very employer and employee as defined in s. 440.02 shall be bound by the provisions of this chapter" (Fla. Stat. § 440.03) and further providing that the term "Employee" does not include "[a]n independent contractor who is not engaged in the construction industry" (Fla. Stat., § 440.02(15)(d)(1)).

[8] Problematic for Uber (which apparently feels that either of the Rasier Agreements leads to the same conclusion that arbitration on an individual basis is required) is that the June 2014 Agreement is substantively different in that it provides: "Except as explicitly set forth in this Agreement,



RICHMAN GREER

MIAMI · WEST PALM BEACH

*Lamour v. Uber – Opp. to Renewed Motion to Compel Arb.*
Case No.: 16-21449-CIV-MARTINEZ-GOODMAN
Page 8

      As set forth more fully below and viewed against the foregoing backdrop, Uber's argument that this case must be arbitrated on an individual basis must be rejected.

**Argument**

**A. Uber has hoisted itself upon its own petard – the illegality of class action waivers, deference to the National Labor Relations Board, and why this case cannot be arbitrated.**

      There are myriad reasons Uber's Renewed Motion should be denied, not the least of which is that the Rasier Agreements on which Uber relies – which combine illegal provisions prospectively waiving collective actions with provisions ensuring that Uber has its day in **_court_** if said illegality is exposed[9] – require this lawsuit to be tried in court (and, if the court permits, on a

---

nothing contained… in this Agreement is intended to or shall be interpreted to create any third-part beneficiary claims.  (June 2014 Agreement at pg. 17.)

[9] As stated above, the Rasier Agreements each contain the following language: "If at any point this provision [agreeing to resolve any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis] is determined to be unenforceable, the parties agree that this provision shall not be severable, unless it is determined that the Arbitration may still proceed on an individual basis only."  (June 2014 Agreement at pg. 14; November 2014 Agreement at section 15.3(v).)  As discussed *infra*, the net effect of this provision in the instant case is that if the collective action waiver is determined to be unenforceable, then said waiver **cannot** be severed from the rest of the arbitration agreement.  In other words, if the collective action waiver fails, so too does the entire arbitration agreement, leaving the parties in court instead of in arbitration.  In *Tigges v. AM Pizza, Inc.*, CV 16-10136-WGY, 2016 WL 4076829 (D. Mass. July 29, 2016), the U.S. Court for the District of Massachusetts pondered upon effectively similar language.  There, the arbitration agreement provided: "should the waiver of class, collective or representative action ... be deemed invalid ... any such permitted class, collective or representative action shall be subject to a court of competent jurisdiction and not arbitration."  *See id*. at *17.  That is, the arbitration agreement in *Tigges* required the parties to resolve their dispute in court if the collective action waiver was deemed invalid.  Regarding such language, the court considered:

> It was then I came to understand just how thoroughly [Defendant] Askew has thought through these litigation issues….
>
> Nothing could more clearly express what's really going on here. Askew is not interested in the "effective vindication" of his employees' statutory rights…. Instead, Askew's first goal is barring his employees from the courthouse altogether. Failing that, he's not interested in arbitration; he wants a genuine trial. And well he should. In this Session of the Court he will get a trial as rapidly as he could get an arbitration hearing. Moreover, he will have full discovery, appellate rights, and application of the rules of evidence. Evidence rules make a real difference here.



**RICHMAN GREER**
MIAMI · WEST PALM BEACH

collective basis).  An examination of the NLRA, the Norris LaGuardia Act, the FAA, and *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) is instructive.

> **i.     The NLRA and the Norris LaGuardia Act clearly and unambiguously confer upon employees a substantive right to engage in collective action.**

Section 7 of the NLRA confers upon employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other *concerted activities* for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157 (emphasis added).  The Norris LaGuardia Act, 29 U.S.C. § 102 served as "the source of the language" of Section 7 (*N.L.R.B. v. City Disposal Sys. Inc.*, 465 U.S. 822, 835 (1984)), similarly declaring that "the individual… worker shall be free from the interference, restraint, or coercion, of employers… in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."  29 U.S.C. § 102.  Moreover, the Norris LaGuardia Act divests courts of jurisdiction to enter "any restraining order or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute… from… singly or in concert… aiding any person participating… in any labor dispute who is… prosecuting… any action or suit in any court…."  29 U.S.C. § 104(d).[10]

Relative to NLRA Section 7, the Act provides in Section 8(a)(1) that it is an unfair labor practice "for an employer… to interfere with, restrain, or coerce employees in the exercise of" the rights guaranteed under Section 7 of the NLRA. 29 U.S.C. § 158(a)(1).[11]  Congress did not define

---

*Id.*  As was the case for the defendant in *Tigges*, Uber's first goal in the present action is to bar its drivers from the courthouse altogether, and failing that, Uber wants a genuine trial with all associated legal rights.

[10] Uber's Renewed Motion could be denied based on the Norris LaGuardia Act alone. Nevertheless, because recent case law and NLRB guidance concerns the NLRA, most of Plaintiff's opposition is focused on the NLRA.

[11] Uber argues in its Renewed Motion that "Plaintiff must arbitrate the issue of his status [as an employee versus and independent contractor] ***before*** he can claim the NLRA invalidates the class and collective action waiver…" *Renewed Motion* at 18 (emphasis in original).  Uber has already tried to make this argument and failed.  In a currently pending putative class action against Uber in the Northern District of California, *Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185, 1208–09 (N.D. Cal. 2015), *aff'd in part, rev'd in part and remanded*, 836 F.3d 1102 (9th Cir. 2016)*,* Uber argued in support of a motion to compel arbitration that a California case dealing with employee rights, *Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal.4th 83 (2000), was



the term "concerted activities" in the NLRA.  Accordingly, the courts should ascribe to that phrase

its ordinary and customary meaning.  *See*, for example, *Pioneer Inv. Servs. Co. v. Brunswick Assoc.*

*Ltd. P'ship*, 507 U.S. 380, 388 (1993).

inapplicable to Mr. Mohamed, an Uber driver, because Uber drivers (per Uber) were not employees.  United States District Court Judge Chen found Uber's argument unavailing and ruled:

> …[I]f putative employers could avoid the rule of *Armendariz* simply by *claiming that* a laborer is not their employee, the rule of *Armendariz* would be effectively nullified. It remains to be seen whether drivers… are, or are not, ... employees under California law. In the meantime, the Court finds that the policy rationale undergirding *Armendariz* can only be vindicated if individuals who can colorably claim to be an entity's employees are not required to pay substantial arbitral forum fees simply to obtain a determination of that precise issue (or threshold questions necessary to reach that determination). If the rule were otherwise, companies could impose substantial forum costs on adverse litigants with impunity merely by denying the existence of an employment relationship.

*Mohamed* at 1208–09 (N.D. Cal. 2015) (footnote omitted herein) (emphasis in original).  Similarly, if Uber was correct that its misclassification of Plaintiff in the instant case required arbitration of Plaintiff's misclassification claim before the illegality or legality of Uber's collective action waiver could be determined, the protections the NLRA affords employees would be effectively nullified and Uber could deny its drivers Section 7 rights merely by denying the existence of an employment relationship.

Moreover, Uber mistakenly believes that misclassifying its drivers as independent contractors can shield Uber from normal judicial procedure and hopes to lead the parties into an arbitral morass. Plaintiff claims that Uber misclassified Plaintiff as an independent contractor instead of an employee, and Uber's wrongly presumes that the court must first send the parties to arbitration on an individual basis, so that an arbitrator can hold a final hearing on the misclassification claim.  Of course, the parties will subsequently be without traditional appellate rights.  *See Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008) (holding that the statutory grounds set forth in the FAA for expedited judicial review of an arbitration award are exclusive, and therefore, a court may only conduct expedited judicial review to confirm, vacate, or modify an arbitration award).  If after the final arbitration hearing the arbitrator determines that Plaintiff was an employee rather than an independent contractor, Plaintiff would presumably have to (after the arbitration is concluded) seek to arbitrate the issue of whether Sections 7 and 8 of the NLRA invalidate the collective action waiver set forth in the Rasier Agreements.  Only then could the arbitrator rule that the collective action waiver is invalid.  As set forth *infra*, such a determination would render the entire arbitration provision unenforceable, the arbitration would become its own Catch-22, and the parties would find themselves before the court trying a collective claim.  Uber's misguided theory about arbitral and judicial theory would result in an enormous waste of time and resources.



When the NLRA was first enacted in 1935, the Oxford English Dictionary defined "concerted" as "arranged by mutual agreement; agreed upon, pre-arranged; planned, contrived; done in concert"; defined "concert" as an "agreement of two or more persons or parties in a plan, design, or enterprise; union formed by such mutual agreement"; and defined "activity" as "the state of being active; the exertion of energy, action." *See In re Fresh & Easy, LLC*, No. 15-12220 (BLS), 2016 WL 5922292, slip op. at \*4 (Bankr. D. Del. Oct. 11 2016) (quoting the Oxford English Dictionary 764 (1st ed. 1933))[12].  According to every legal scholar's favorite tome, Black's Law Dictionary, the phrase "concerted activity" is defined as "action by employees concerning wages or working conditions; esp., a conscious commitment to a common scheme designed to achieve an objective."  *See Fresh & Easy* at \*4 (quoting Black's Law Dictionary (10th ed. 2014)).  After considering the foregoing definitions, the Chief Judge of the U.S. Bankruptcy Court for the District of Delaware noted in *Fresh & Easy* that it was drawn to the conclude that "the ordinary meaning of 'concerted activities' within the context of Section 7 protects a broad range of employee conduct" and that:

> Collective adjudication fits well within this protected range because at its core it is a planned arrangement among more than one employee for a particular work-related purpose. Other courts have similarly construed "concerted activities" as encompassing collective adjudication. *Morris v. Ernst & Young, LLP*, No. 13-16599, 2016 WL 4433080, at \*3 (9th Cir. Aug. 22, 2016); *Lewis*, 823 F.3d at 1153; *see Brady v. Nat'l Football League*, 644 F.3d 661, 673 (8th Cir. 2011) ("[A] lawsuit filed in good faith by a group of employees to achieve more favorable terms or conditions of employment is 'concerted activity' under § 7 of the National Labor Relations Act.").

*Fresh & Easy, LLC*, *supra*, at \*5 (footnote omitted herein).  Moreover, the Court noted (at \*5), that the Supreme Court has considered Section 7 of the NLRA in the context of collective action against an employer.  Specifically, in *City Disposal Sys. Inc.*, *supra*, the Supreme Court observed:

> [I]t is evident that, in enacting § 7 of the NLRA, Congress sought generally to equalize the bargaining power of the employee with that of his employer by allowing employees to band together in confronting an employer regarding the terms and conditions of their employment. There is no indication that Congress

---

[12] The understanding and meaning of "concerted" remains unchanged today. Presently, the Oxford American Dictionary defines "concerted" as "jointly arranged, planned, or carried out; coordinated." New Oxford American Dictionary 359 (3d ed. 2010).  Accordingly, the meaning has not changed since the time the NLRA was enacted.  *See Fresh & Easy* at \*4.



> intended to limit this protection to situations in which an employee's activity and that of his fellow employees combine with one another in any particular way.

*Id.* at 835.  The National Labor Relations Board ("NLRB" or "Board") has interpreted the NLRA as creating a substantive right for employees to seek ***collective*** vindication of their Section 7 rights. *See Murphy Oil USA, Inc.*, 361 NLRB No. 72, at 6-7 (2014) *enf. denied* 808 F.3d 1013 (5th Cir. 2015); *D.R. Horton*, 357 NLRB No. 184, at 16 (2012) *enf. denied* 737 F.3d 344 (5th Cir. 2013). Numerous courts of law have done so as well.  *See Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1160 (7th Cir. 2016) ("That Section 7's rights are 'substantive' is plain from the structure of the NLRA: Section 7 is the NLRA's *only* substantive provision.) (emphasis in original); *see also Morris v. Ernst & Young, LLP*, 834 F.3d 975, 980 (9th Cir. 2016) ("Concerted activity—the right of employees to act *together*—is the essential, substantive right established by the NLRA.") (emphasis in original); *Fresh & Easy* at *6 ("Congress has spoken directly through enactment of the NLRA to create a substantive right for employees to proceed collectively to protect or vindicate rights conferred under Section 7."); *Tigges v. AM Pizza, Inc.*, No. CV 16-10136-WGY, 2016 WL 4076829, at *14 (D. Mass. July 29, 2016) ("Section 8 is the enforcement provision, and Section 7 is the underlying substantive provision, not a mere procedural one") (citing *Lewis*); *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1262 (C.D. Cal. 2016) ("Given the myriad forms that protected collective action can take, Defendants cite to no authority that can provide a reasoned basis why the Court should create a special carve-out for concerted *legal* activity and deem that particular form of concerted action unprotected activity.").

The conclusion that Section 7 confers a substantive right to engage in collective legal action is sound and logical, considering that an employee's ability to file a collective suit on behalf of similarly situated workers furthers important policies underlying Section 1 of the NLRA: to provide "equality of **bargaining power** between employers and employees" and to "protect the exercise by workers of **full freedom of association** ... **for the purpose of negotiating** the terms and conditions of their employment ***or other mutual aid or protection***." 29 U.S.C. § 151.  As the Court stated in *Fresh & Easy*:

> Collective legal action balances the playing field by providing a feasible means for employees to assert rights where they would otherwise "have no realistic day in court if a class action were not available." *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 809 (1985). "Collective, representative, and class legal remedies allow employees to band together and thereby equalize bargaining power." *Lewis*, 823 F.3d at 1153. Many of the chief benefits of proceeding as a class dovetail with the



RICHMAN GREER
MIAMI · WEST PALM BEACH

> notion of equalizing the parties' disparate positions; for instance, proceeding as a class action may bolster employees' negotiating position, allows access to counsel that would not otherwise take the case given the amount of the individual claims, and helps ensure employers listen to its employees' allegations given the aggregate liability of the pooled claims. Access to judicial fora is one of the recognized ways employees seek to improve terms and conditions of employment. *Eastex*, 437 U.S. at 566. Requiring employees to bring claims individually frustrates the NLRA's goal of "protect[ing] the right of workers to act together to better their working conditions." *NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 14 (1962).

*Id*. at *5.

This Court should join the Seventh Circuit, Ninth Circuit, and the other courts that have ruled similarly on the issue, and find that Congress has, by enacting the NLRA, clearly created a substantive right for employees to ***collectively*** seek legal redress of their Section 7 rights.

Neither the Supreme Court nor the Eleventh Circuit has decided the precise issue of whether the right to bring a collective action is a substantive right under the NLRA. Indeed, three Petitions for Certiorari have been filed with the United States Supreme Court seeking an answer to this very question. *See Morris*, *infra* (wherein the Ninth Circuit answered the question in the affirmative); *Lewis*, *infra* (wherein the Seventh Circuit also answered the question in the affirmative); and *Murphy Oil USA, Inc. v. N.L.R.B.*, 808 F.3d 1013 (5th Cir. 2015) (answering the question in the negative). In candor to this tribunal, we note that in *Steingruber v. Family Dollar Stores of Florida, Inc.*, 2015 WL 10818618 (M.D. Fla. 2015), the Court did not agree with Plaintiff's argument that a class action waiver violated her substantive rights to bring a collective action under the NLRA. However, the Court's disagreement was in part grounded upon a determination that "neither the NLRA's statutory text nor its legislative history contains [a] congressional command against application of the FAA." *Id*. at *4.[13] That is an entirely different question from the one presented herein, i.e., whether the right to bring a collective action is a

---

[13] With absolute respect to the Middle District Court, the ruling in *Steingruber* appears to mis-cite *CompuCredit Corp. v. Greenwood*, 132 S.Ct. 665, 669 (2012) as the source for the foregoing quote. The *CompuCredit* opinion does not contains such language, nor does it even pertain to (or mention) the NLRA. Rather, the Supreme Court held in *CompuCredit* that because the Credit Repair Organization Act "is silent on whether claims under the Act can proceed in an arbitrable forum, the Federal Arbitration Act (FAA) requires the arbitration agreement to be enforced according to its terms." *Id*. at 667. More likely, the Court in *Steingruber* intended to quote *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344 (5th Cir. 2013) (cited later in the same paragraph), a decision the Seventh Circuit disagreed with in *Lewis* after fulsome briefing on the issue.



RICHMAN GREER

MIAMI • WEST PALM BEACH

substantive right under the NLRA such that a collective action waiver violates an employee's Section 7 rights.  Because the Middle District obviously did not have the benefit of the full briefing that was presented to the Seventh Circuit in *Lewis* and to the Ninth Circuit in *Morris*, this Court should not be persuaded by *Steingruber*.  Moreover, *D.R. Horton* is clearly inapplicable to the instant case because, as set forth in section A(iii) below, a finding that the NLRA contains a congressional command contrary to the FAA is not necessary where, as with the question presented to this Court, the NLRA and the FAA can be read in harmony.

**ii.     Even if the NLRA does not unambiguously confer upon employees a substantive right to engage in collective legal action (which it does), the NLRB's reasonable interpretation that such a right *is* conferred is entitled to deference.**

The NLRA unequivocally states that the NLRB "is empowered… to prevent any person from engaging in any unfair labor practice…."  29 U.S.C. § 160(a).  As such, "Congress gave the NLRB exclusive authority to administer the NLRA and primary jurisdiction as an administrative tribunal to enforce its provisions."  *Brock v. Writers Guild of Am., W., Inc.*, 762 F.2d 1349, 1358 at fn.8 (9th Cir. 1985) (citing *Burke v. French Equipment Rental, Inc.,* 687 F.2d 307, 311 (9th Cir.1982)).  Moreover, in *N.L.R.B. v. City Disposal Sys. Inc.*, 465 U.S. 822 (1984), the Supreme Court "reaffirmed" that:

> [T]he task of defining the scope of § 7 [of the NLRA] "is for the Board to perform in the first instance as it considers the wide variety of cases that come before it," *Eastex, Inc. v. NLRB,* 437 U.S. 556, 568, 98 S.Ct. 2505, 2513, 57 L.Ed.2d 428 (1978), and, on an issue that implicates its expertise in labor relations, a reasonable construction by the [National Labor Relations] Board is entitled to **considerable deference**, *NLRB v. Iron Workers,* 434 U.S. 335, 350, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978); *NLRB v. Hearst Publications, Inc.,* 322 U.S. 111, 130-131, 64 S.Ct. 851, 860, 88 L.Ed. 1170 (1944).

*Id.* at 829–30 (emphasis added herein).  Accordingly, the NLRB is the agency that administers and construes the NLRA.

The Supreme Court has "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations."  *Chevron* at 844.  In *Chevron*, the Court prescribed how to determine whether to defer to an agency's construction of a statute the agency administers:



**RICHMAN GREER**

MIAMI · WEST PALM BEACH

First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.  If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id*. at 842–43.  Then, "[i]f the Board has adopted a reasonable construction, it is 'entitled to considerable deference.'"  *Fresh & Easy* at \*4 (quoting *NLRB v. City Disposal Sys.*, 465 U.S 822, 829 (1984) and citing *see ABF Freight System, Inc. v. NLRB*, 510 U.S. 317, 324 (1994)).

Here, because Section 7 unambiguously grants a substantive right to engage in collective action, the Court need not consider whether to defer under *Chevron* to the NLRB's (same) conclusion.  However, assuming *arguendo* that the NLRA does not *unambiguously* grant employees a substantive right to engage in collective action, the NLRB's construction is certainly permissible and reasonable.  Without a substantive right to collectively petition for legal redress from an employer, workers would be effectively stripped of their ability to engage in concerted activities aimed at seeking mutual aid or protection.  Accordingly, even if the Court were to find some ambiguity with regard to whether Section 7 creates a substantive right to engage in collective action, *Chevron* deference to the NLRB's construction of Section 7 would be proper.

**iii.     The NLRA and the FAA can be read in harmony, and the FAA's saving clause requires a finding that Uber's collective action waiver is unenforceable.**

Section 2 of the FAA contains a saving clause providing that valid written arbitration agreements shall be enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

In *Lewis*, *infra*, the Chief Judge of the Seventh Circuit considered a motion to dismiss and compel arbitration in an FLSA misclassification action brought by workers who had executed arbitration agreements containing collective action waivers.  On the issue of whether the FAA and the NLRA clash, the Court explained:

…[T]here is no conflict between the NLRA and the FAA, let alone an irreconcilable one. As a general matter, there is "no doubt that illegal promises will not be enforced in cases controlled by the federal law." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982). The FAA incorporates that principle through its saving clause: it confirms that agreements to arbitrate "shall



*Lamour v. Uber – Opp. to Renewed Motion to Compel Arb.*
Case No.: 16-21449-CIV-MARTINEZ-GOODMAN
Page 16

> be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. **Illegality is one of those grounds**. See *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) (noting that illegality is a ground preventing enforcement under § 2). The NLRA prohibits the enforcement of contract provisions like Epic's, which strip away employees' rights to engage in "concerted activities." Because the provision at issue is unlawful under Section 7 of the NLRA, it is illegal, and meets the criteria of the FAA's saving clause for nonenforcement. Here, **the NLRA and FAA work hand in glove**.

*Id*. at 1157 (emphasis added).  Other courts have reached the same conclusion.  *See Morris*, *infra* at 979, 986 (holding collective action waiver unenforceable under the FAA and stating that "[t]he FAA does not mandate the enforcement of contract terms that waive substantive federal rights" and therefore "when an arbitration contract professes the waiver of a substantive federal right, the FAA's saving clause prevents a conflict between the statutes by causing the FAA's enforcement mandate to yield."); *see also Fresh & Easy* at *8-9 ("There is no conflict between the NLRA and the FAA because the FAA does not require enforcement of class waivers…. The NLRA and the FAA can coexist.  The FAA's savings clause prevents a conflict between the statutes.") (internal citations omitted herein); *Tigges* at *15 ("Since… enforcing an arbitration agreement barring class actions would infringe on a substantive federal right, the FAA provides nothing to the contrary.") (internal citation omitted herein).[14]  Moreover, as the Court also recognized in *Fresh & Easy*:

---

[14] While it is true that other courts have enforced collective action waivers under the FAA (e.g., *Murphy Oil* (808 F.3d at 1013); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. 2013)), the Eleventh Circuit has not weighed in on this issue; accordingly, this Court may render a decision of its own.  Moreover, even the Second Circuit seems to wish that it could reconsider its earlier opinion in *Sutherland*:

> If we were writing on a clean slate, we might well be persuaded, for the reasons forcefully stated in Chief Judge Wood's and Chief Judge Thomas's opinions in *Lewis* and *Morris*, to join the Seventh and Ninth Circuits and hold that the… waiver of collective action is unenforceable. But we are bound by our Court's decision in *Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013), which aligns our Circuit on the other side of the split. In considering an alternative argument made by the plaintiff in that case, *Sutherland* "decline[d] to follow the [NLRB's] decision" in *Horton I* "that a waiver of the right to pursue a FLSA claim collectively in any forum violates the [NLRA]." *Id*. at 297 n.8. We are bound by that holding "until such time as [it is] overruled either by an en banc panel of our Court or by the Supreme Court." *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004).



RICHMAN GREER

MIAMI · WEST PALM BEACH

Section 2 demonstrates that the purpose of the FAA was not meant to make arbitration agreements more enforceable than other contracts. *Prima Paint*, 388 U.S. at 404 n.12. The FAA does not elevate arbitration agreements and the rights conferred thereunder on a pedestal "on which all other legal rights are to be sacrificed." *Tigges v. AM Pizza, Inc.*, No. CV 16-10136-WGY, 2016 WL 4076829, at \*14 (D. Mass. July 29, 2016). The FAA does not require the enforcement of illegal provisions and Section 2 of the FAA excepts from the FAA's enforcement grasp those contracts where a valid contract defense applies.

*Id.* at \*9.

Accordingly, this Court does not need to find a congressional command that the NLRA overrides the FAA in order to deny Uber's Renewed Motion, and the Middle District's statements in *Steingruber* are of no moment with respect to the instant case.  The FAA's Section 2 saving clause prevents a conflict between the FAA and the NLRA and allows the statutes to be read in harmony.  Because the Rasier Agreements' arbitration provisions purportedly waiving collective action are illegal, it would be error for the Court to grant Uber's Renewed Motion and require the parties to arbitrate Plaintiff's claims.

**iv.    Uber's opt-out provisions do not breathe new life into the class action waiver; they only doom the arbitration provisions a second time.**

Uber argues in its Renewed Motion that the Rasier Agreements' opt-out provisions render the collective action waiver "voluntary".  *Renewed Motion* at 17.  However, Uber's argument is unavailing because the opt-out provisions do not and cannot revive and elevate to legal status Uber's patently **illegal** collective action waivers.

Uber relies heavily in its Renewed Motion on the Ninth Circuit's decisions in *Johnmohammadi v. Bloomingdales, Inc.*, 755 F.2d 1072 (9th Cir. 2014), *Mohamed v. Uber*

---

*Patterson v. Raymours Furniture Co., Inc.*, 2016 WL 4598542, at \*2, 2016 L.R.R.M. (BNA) 287695 (2d Cir. 2016), *as corrected* (Sept. 7, 2016), *as corrected* (Sept. 14, 2016).

The cases Uber cites in support of its argument that in the Eleventh Circuit the collective action waiver must be enforced – *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326 (11th Cir. 2014), *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005), and *Stanfield v. Fly Low, Inc.*, No. 15-20224-CIV, 2015 WL 4647904 (S.D. Fla. Aug. 5 2015) – are inapposite because **none of those cases involved the question of whether a collective action waiver violates a clear substantive right conferred by Section 7 of the NLRA or, alternatively, whether the NLRB's interpretation that Section 7 creates such a non-waivable substantive right is entitled to *Chevron* deference**.  Instead, the cases Uber cites were decided on other grounds and are not in any way determinative of the issue presently before this Court.



*Technologies, Inc.*, 836 F.3d 1102, (9th Cir. 2016), and *Morris v. Ernst & Young, LLP* (*infra*).[15]

However, Uber's faith is misplaced because *Johnmohammadi* (which *Mohamed* and *Morris* cite to with regard to the proposition Uber raises in its Renewed Motion) was decided **before** a critical decision of the NLRB – *On Assignment Staffing Services, Inc.*, 362 NLRB No. 189, 2015 WL 5113231 (Aug. 27, 2015), *enforcement denied*, No. 15-60642 (5th Cir. June 6, 2016) (summary disposition)[16].  In *On Assignment*, the NLRB (construing the NLRA; the statute it administers) considered an individual arbitration agreement containing an opt-out clause and determined that even though individual arbitration was not a **condition** of employment, the arbitration provisions nevertheless **still violated the NLRA**.  For the same reasons described further herein, the NLRB also determined in *On Assignment* that the existence of an opt-out mechanism imposed **additional** burdens on the employees' Section 7 rights.  In other words, the Board ruled that an opt-out mechanism does not revive an unlawful collective action waiver; rather, it only serves to invalidate an arbitration agreement a second time.

The significance of the NLRB's construction of the NLRA in *On Assignment* cannot be overstated.  First, applying the same reasoning, the NLRB considered Uber's arbitration provisions and **"agree[d] with the drivers' position that the agreements violate the NLRA."**  *See* Brief for National Labor Relations Board as *Amicus Curiae* supporting Appellees at 4, *O'Connor v. Uber Technologies, Inc.*, Nos. 15-17420, 15-17422 (9th Cir. November 2, 2016) (emphasis added).[17] Second, if the NLRB's construction of the NLRA is merely **reasonable**, then unless this Court determines that the text of the NLRA clearly and unambiguously answers, in the negative, the precise question of whether an employee's Section 7 rights are violated when a collective action waiver and an opt-out provision are contained in the same agreement, there are only two alternative outcomes: (1) either the Court can find that the text of the NLRA clearly and unambiguously answers the same question in the affirmative, or (2) it must, pursuant to *Chevron*, give considerable deference to the NLRB's interpretation of the NLRA, if reasonable.  **_That_** is the analysis that this

---

[15] As noted above, Ernst & Young, the employer, lost and has petitioned the Supreme Court for certiorari review.

[16] The Fifth Circuit's denial of enforcement of the NLRB's decision follows its previous determination (*contrary to that of the Ninth and Seventh Circuits*) that the NLRA does not confer upon employees a substantive right to engage in collective legal action.

[17] A copy of the NLRB's brief in *O'Connor* is attached hereto as **Exhibit "B"** and Plaintiff respectfully asks the Court to take judicial notice of the fact that the NLRB filed said brief and to review and consider the NLRB's arguments and conclusions set forth therein.



Court must perform.  The Ninth Circuit did not have the benefit of the NLRB's decision in *On Assignment*; therefore, the aspects of the opinions in *Johnmohammadi*, *Morris*, and *Mohamed* upon which Uber relies (aspects which are clearly *dicta*) are moot.

It is clear that Congress has not answered the above question in the negative.  Nothing in the NLRA indicates that an employer acts lawfully when it includes both a collective action waiver and an opt-out provision in an arbitration agreement.  Proceeding to the two-part inquiry described above, the next question to ask is whether the NLRA clearly and unambiguously answers the same question in the affirmative.  Recognizing that Section 7 rights are nonwaivable, the Court in *Tigges*, *supra*, found that it does and stated that "[t]he NLRA is not ambiguous with respect to this issue, and even if it were, the NLRB's interpretation is eminently reasonable."  While it is true that the Court in *Fresh & Easy* did not go as far as ruling that the NLRA is unambiguous with regard to this issue and that, instead, it found that the NLRA "is susceptible to two plausible constructions" (*id*. at *12), the Court in *Fresh & Easy* found that, pursuant to *Chevron*, it was proper to defer to the Board's reasonable interpretation of the Act as expressed in *On Assignment*.  *Id*. at *12.  As such, it came to the same conclusion: regardless of an opt-out mechanism, a collective action waiver is unenforceable under the NLRA.

Like the Respondent-employer in *On Assignment*, Uber argues here that the opt-out provision renders the collective action waiver voluntary – as if Uber and its drivers were negotiating the terms of the Rasier Agreements at arms-length and, moreover, as if the ability to opt-out of individual arbitration could validate an otherwise illegal collective action waiver rather than impose further unlawful burdens on Uber's drivers in violation of their Section 7 rights.  Like the NLRB in *On Assignment*, this Court should reject Uber's argument and follow the lead of the Courts in *Tigges* and *Fresh & Easy* because the NLRB's reasoning is rational and consistent with the NLRA.  Specifically, the Board determined in *On Assignment*:

> The Agreement's prohibition against the pursuit of class or collective claims violates Section 8(a)(1). The existence of an opt-out procedure--itself a condition of employment, as part of the Agreement--does not change this fact.  While the Respondent's employees may *retain* their Section 7 rights by following the prescribed opt-out procedure, Section 8(a)(1)'s reach is not limited to employer conduct that completely prevents the exercise of Section 7 rights. Instead, the long-established test is whether the employer's conduct *reasonably tends* to *interfere* with the free exercise of employee rights under the Act. The Respondent's opt-out procedure reasonably tends to interfere with its employees' exercise of their Section 7 rights in at least two ways.



*Lamour v. Uber – Opp. to Renewed Motion to Compel Arb.*
Case No.: 16-21449-CIV-MARTINEZ-GOODMAN
Page 20

First, the opt-out procedure interferes with Section 7 rights by requiring employees to take affirmative steps… to retain those rights.… Even employees who wish to retain their Section 7 rights will lose them unless they correctly follow the specified procedures.

Regardless of the procedures required, the fact that employees must take any steps to preserve their Section 7 rights burdens the exercise of those rights. A rule requiring employees to obtain their employer's permission to engage in protected concerted activity is unlawful, even if the rule does not absolutely prohibit such activity and regardless of whether the rule is actually enforced. Even a rule requiring only advance notice that an employee will engage in protected concerted activity is an impediment to the exercise of Section 7 rights. The Respondent's opt-out procedure is not materially different in the burden that it places on the exercise of Section 7 rights and is, therefore, similarly unlawful.

Second, the Respondent's opt-out procedure interferes with Section 7 rights because it requires employees who wish to retain their right to pursue class or collective claims to "make 'an observable choice that demonstrates their support for or rejection of'" concerted activity. *Allegheny Ludlum Corp.*, 333 NLRB 734, 740 (2001), enfd. 301 F.3d 167 (3d Cir. 2002). The Board has long held that an "employee is entitled to keep from his employer his views concerning unions, so that the employee may exercise a full and free choice on the point, uninfluenced by the employer's knowledge or suspicion about those views and the possible reaction toward the employee that his views may stimulate in the employer." *Quemetco, Inc.*, 223 NLRB 470, 470 (1976). Accordingly, "any attempt by an employer to ascertain employee views and sympathies regarding unionism generally tends to cause fear of reprisal in the mind of the employee if he replies in favor of unionism and, therefore, tends to impinge on his Section 7 rights." *Struksnes Construction Co.*, 165 NLRB 1062, 1062 (1967). This "right to remain silent . . . to protect the secrecy" of employees' views concerning unions applies equally to the Section 7 right to engage in concerted activity. See *Stoner Lumber, Inc.*, 187 NLRB 923, 930 (1971), enfd. mem. 1972 WL 3035 (6th Cir. 1972).

The Respondent's opt-out procedure places employees in a similar predicament because it forces them to reveal their sentiments concerning Section 7 activity. This procedure requires that employees choose one of two options. They can become bound by the unlawful Agreement--and forever waive their Section 7 rights--by doing nothing. Or employees can notify the Respondent that they have elected to opt out of the unlawful Agreement and thus, retain the ability to exercise rights fundamental to the Act. Under the circumstances here, an employee reasonably would believe that choosing this latter option would be construed as a rejection of the Respondent's strong preference that employees forever waive their Section 7 right to engage in concerted litigation. The Respondent's mandatory opt-out procedure interferes with employees' Section 7 rights by "effectively put[ting] them in the position of having either to accept or reject" the Respondent's clearly



preferred course of action. The unlawful interference of the Respondent's opt-out procedure is only amplified by the manner in which employees must make this observable choice. To effectively opt out, employees must explicitly request to be exempted from the requirement to arbitrate, in writing, by providing their name, signature, and the date. This puts the Respondent in the position of having a permanent record of which employees choose to opt out--a fact obvious to employees--and thereby further pressures them to become bound to the unlawful Agreement.

In sum, then, the Respondent's unlawful arbitration agreement is not saved from illegality by its mandatory opt-out procedure, which itself burdens and interferes with the exercise of rights protected by the Act.

*On Assignment* at 5-7 (internal citations and footnotes omitted) (emphasis in original).

The Board's reasoning is consistent with the Seventh Circuit's determination in *Lewis* that the employer's *attempt* to contract with its employee to waive his Section 7 rights was unlawful "regardless whether [the employee] agreed to that contract." *Id*. at 1159. In *Fresh & Easy*, the Court found the Board's interpretation "reasonable and consistent with the NLRA's purpose." *Id*. at *12 (citing *Tigges*, 2016 WL 4076829, at *15-16 and *Lewis*, 823 F.3d at 1159). As alluded to above, this issue is being litigated on appeal in the Ninth Circuit in the *O'Connor* case, and the NLRB has filed an *amicus* brief in support of Uber drivers so that the Ninth Circuit will fully understand the Board's position. Plaintiff's position is in accord with the Court in *Tigges*: the NLRA is not ambiguous with respect to this issue and the presence of an opt-out clause does not breathe new life into the class action waiver. Rather, it only dooms the collective action waiver and the arbitration agreements a second time. However, even if the NLRA were not clear with respect to this issue, the Board's conclusion that opt-out provisions do not save otherwise illegal collective action waivers is based on reasonable sound logic, and thus is entitled to deference.

**v.      Because the collective action waiver violates the NLRA, the arbitration provisions fail.**

Uber creates a straw-man by suggesting that to deny its motion would be an existential attack on the FAA. This is plain fiction. As explained above, the NLRA and the FAA can be read harmoniously. Further, the NLRA's conclusion that a collective action waiver is unlawful (even when a contract contains opt-out provisions) **has nothing to do with arbitration per se**. In *D.R. Horton*, *supra*, the Board concluded:

By maintaining a mandatory arbitration agreement provision that waives the right to maintain class or collective actions in all forums, ***whether arbitral or judicial***,



> and that employees reasonably could believe bars or restricts their right to file
> charges with the National Labor Relations Board, the Respondent has engaged in
> unfair labor practices … and has violated Section 8(a)(1) of the Act.

*Id*. at \*17.  Uber's problem is not the arbitral forum.  Rather, Uber's problem is the collective action waiver because for two simple reasons the unenforceability of the collective action waiver triggers the failure of the arbitration provisions.

First, the collective action waiver is inextricable intertwined with the arbitration provisions, appearing no less than **three times in both Rasier Agreements**.  *See* June 2014 Agreement at pgs. 11, 12, and 14; November 2014 Agreement at sections 15.3, 15.3(i), and 15.3(v).  It is a central aspect of the arbitration provisions.  As such, the failure of the collective action waiver results in the failure of the entire arbitration agreement.  In *Fresh & Easy*, the Court considered a similar arbitration provision and unenforceable collective action waiver and noted that:

> [T]he Arbitration Agreement does not provide a specific saving mechanism in the event the Class Waiver is held unenforceable. *See generally Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 271 (3d Cir. 2003). Without contractual language that the parties would agree to class arbitration in the event the Class Waiver was held invalid, the Court will not require the Debtor to proceed to class arbitration. "[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt Nielsen*, 559 U.S. at 684 (emphasis in original). Thus, the Class Waiver cannot be severed because the agreement does not indicate the parties intended to be bound by class arbitration. *Id.* at 685 (holding that parties cannot be presumed to consent to class arbitration for "simply agreeing to submit their disputes" to arbitration).

*Fresh & Easy* at \*13.  This segues into the second reason that the unenforceability of the collective action waiver triggers a failure of the arbitration provisions as a whole: **Uber drafted the Rasier Agreements that way**.  As noted above, the Raiser Agreements provide that

> You and the Company agree to resolve any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis.  The Arbitrator shall have no authority to consider or resolve any claim or issue any relief on any basis other than an individual basis.  If at any point this provision is determined to be unenforceable, the parties agree that this provision ***shall not be severable***, unless it is determined that the Arbitration may still proceed on an individual basis only."

*See* June 2014 Agreement at pg. 14; November 2014 Agreement at section 15.3(v) (emphasis added).  Here, the collective action waiver is unenforceable for the reasons identified above (and below).  Accordingly, per the Rasier Agreements, the collective action waiver is not severable



(unless, as Uber puts it circularly, an arbitration may still proceed on an individual basis, which it clearly cannot); and if the collective action waiver is not severable, then its failure results in a failure of the rest of the arbitration provisions.[18]

In short, arbitration cannot be compelled because by the very documents it drafted, Uber has hoisted itself on its own petard.

**B. The delegation clauses are not clear and unmistakable and are unconscionable, and the arbitration agreements are unconscionable.[19]**

Because the NLRA precludes enforcement of Uber's illegal collective action waivers, resulting in a failure of the arbitration provisions in the Rasier Agreements, the Court may end its inquiry and deny Uber's Renewed Motion. Even so, the Renewed Motion must also be denied because the delegation clauses are not clear and unmistakable and both the delegation clauses and the arbitration agreements are unconscionable.

As set forth in the "Introductory Post Script" above, Uber, citing *Jenkins v. First American Cash Advance of Georgia, LLC*, *supra*, already conceded in the *Marc* case that this Court, not an arbitrator, should decide the issue of the collective action waiver. Uber is correct in that regard. Beyond Uber's admission and the Eleventh Circuit's opinion in *Jenkins*, the collective action waiver issue and issues of unconscionability must also be decided by the Court because the Rasier Agreements' delegation clauses are not clear and unmistakable.

As the Supreme Court stated in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), "courts should not assume that … parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistabl[e]' evidence that they did so." *Id*. at 939 (brackets in original) (citing *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986). Uber's delegation clauses – delegating, without limitation, issues of enforceability, revocability or validity of the arbitration provision to the arbitrator – are not clear and unmistakable because they are ambiguous

---

[18] Uber must have understood the meaning and import of the terms it drafted because Uber has since removed that provision from subsequent agreements.

[19] Some, but not all, of the following analysis mirrors Northern District of California Judge Chen's analysis in the *Mohamed* case, *supra*. 109 F. Supp. 3d 1185, in denying Uber's motion to compel arbitration. While Plaintiff acknowledges that Judge Chen's ruling and reasoning was affirmed in part, reversed in part, and remanded in part, and that Uber has had favorable rulings in Florida District Courts when seeking to compel arbitration (but never with a court deciding the NLRA issue), the Eleventh Circuit has not ruled on these issues with regard to the Rasier Agreements.



when read in connection with conflicting provisions in the Rasier Agreements.  Specifically, they conflict in this case with the following aspects of the Rasier Agreements:

- The Workers Compensation Exception, identified *supra*.  For the reasons set forth in footnote 7 above, this provision is ambiguous.  In the mind of an unsophisticated driver such as Plaintiff, "workers compensation" could reasonably be interpreted as what the worker is compensated, *i.e.*, what the driver gets paid.  *See Valliere v. Olmo*, No. CV106005762, 2011 WL 1734784, at *3 (Conn. Super. Ct. Apr. 12, 2011) (finding phrase" workers' compensation lawsuit" not clear and unambiguous and construing ambiguity against drafter.)  **Moreover, *this is a basis for denying Uber's Renewed Motion altogether, separate and apart from anything else raised herein.*  Because this provision is ambiguous, and because the ambiguity must be construed against Uber, the Rasier Agreements, which exempt "[c]laims for workers compensation" from the arbitration provisions could reasonably be read as excepting from arbitration Plaintiff's claim for compensation under the FLSA.**

- The Appeal-the-Arbitration-Award Clause, identified *supra*.  This provision, when applied to decisions arising under the delegation clause, contradicts established Supreme Court precedent.  *See Hall Street*, *supra*, at 578 (holding that the statutory grounds set forth in the FAA for expedited judicial review of an arbitration award are exclusive, and therefore, a court may only conduct expedited judicial review to confirm, vacate, or modify an arbitration award).

- "…any disputes, actions, claims or causes of action arising out of or in connection with this agreement… shall be subject to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco, California." (June 2014 Agreement at pg. 17; November 2014 Agreement at section 15.1.).  This provision clearly conflicts with the delegation clause, which sends all disputes, without limitation, to an arbitrator.

- In the same paragraph as the above provision, the June 2014 Agreement states that "[i]f any provision of this Agreement is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law." (June 2014 Agreement at pg. 17.).[20]  Given the placement of this provision in the same paragraph as the exclusive jurisdiction provision, an Uber driver might reasonably understand that a court of law is to decide whether provisions in the agreement are invalid or unenforceable.

- The Court-Injunction Exception, identified *supra*.  Uber's placement of this provision far apart from the delegation clause would naturally confuse an Uber driver who separately reads the delegation clause sending **all** disputes to arbitration.  Thus the delegation clause is not clear and unmistakable.

These ambiguities doom Uber's delegation clause, and any consideration of whether resort to cannons of contract interpretation could resolve such ambiguities only proves the point: the

---

[20]  This language was removed from the November 2014 Agreement, reflecting Uber's understanding of the ambiguous nature of the provision.  Uber's Renewed Motion attaches both Rasier Agreements, causing contradictions within the very documents under which Uber seems to be seeking relief.



RICHMAN GREER
MIAMI · WEST PALM BEACH

delegation clauses are not clear and unmistakable.  *See*, *for example*, *Gilbert St. Developers, LLC v. La Quinta Homes, LLC*, 174 Cal. App. 4th 1185, 1192, 94 Cal. Rptr. 3d 918, 922–23 (2009) ("it is not enough that ordinary rules of contract interpretation simply yield the result that arbitrators have power to decide their own jurisdiction. Rather, the result must be clear and unmistakable, because the law is solicitous of the parties actually *focusing* on the issue. Hence silence or ambiguity is not enough.") (emphasis in original).

The delegation clauses and arbitration provisions also fail because they are both substantively and procedurally unconscionable.  Regarding substantive unconscionability, as indicated above, the agreements provide that an arbitrator may not commit errors of law or legal reasoning, and they confer appellate rights in violation of the Supreme Court's holding in *Hall Street*.  Patently, this is substantively unconscionable – *it is legally impermissible*.  Moreover, as identified, *supra*, the Rasier Agreements provide that arbitration fees – which would obviously be substantial in a nationwide suit on behalf of thousands of similarly situated plaintiffs whether or not the arbitration is commenced to determine issues of arbitrability under the delegation clause or to determine the merits of Plaintiff's claims – are to be split between Uber and Plaintiff.  In support, fee schedules for four different JAMS' (the designated arbitration company's) arbitrators (three in Florida, one in California) are attached hereto as **Composite Exhibit "C"**.  Additionally, the Court-Injunction Exception is substantively unconscionable because it unilaterally favors Uber; that is, Uber drivers would in the real world never need to avail themselves of said provision, whereas Uber might frequently need to do so, and thus the Court-Injunction Exception only benefits Uber.

The delegation clause is procedurally unconscionable because it is hidden and essentially de-emphasized by following bolded generalized text regarding the arbitration provision.  *See* June 2014 Agreement at pg. 12; November 2014 Agreement at section 15.3(i).  The delegation clause is procedurally unconscionable because (a) it does not inform drivers of drawbacks related to the delegation clause, *e.g.*, arbitrability-related arbitration expenses and diminished appellate rights (under *Hall Street*); and (b) since accepting the agreement on their phone or tablet device is the one obstacle to beginning to earn money driving for Uber, drivers would naturally feel pressured to accept the arbitration agreement (and thus accept Uber's obvious preference for arbitration) so they could start giving rides to passengers.  Finally, and perhaps most important, the delegation



*Lamour v. Uber – Opp. to Renewed Motion to Compel Arb.*
Case No.: 16-21449-CIV-MARTINEZ-GOODMAN
Page 26

clause is illegal (and thus unconscionable) because of the collective action waiver that violates the NLRA.

The general arbitration provisions fail for essentially the same reasons identified above with respect to the delegation clause (except for the reasons specifically pertaining to the delegation clause, e.g., the hidden un-bolded delegation clause, and Uber's failure to inform drivers about the drawback of arbitrability-related arbitration expenses; though Uber does not inform drivers about the drawback of arbitration expenses *generally*, which does weigh in favor of a finding of procedural unconscionability). Finally, the arbitration provisions are illegal (and thus unconscionable) because of the collective action waiver.

Accordingly, the delegation clauses and arbitration provisions fail.

<u>Conclusion</u>

The delegation clauses and general arbitration provisions of the Rasier Agreements are illegal and unenforceable under the NLRA and based on principles of unconscionability. Uber's Renewed Motion must therefore be denied so that its drivers can finally vindicate their FLSA rights in a Court of law.

WHEREFORE, Plaintiff respectfully requests that Uber's Renewed Motion be denied and that the Court granted any such further relief it deems just and proper.

Dated:  December 15, 2016                 Respectfully submitted,

By:  */s/ Adam M. Myron*_____
                GERALD F. RICHMAN
                grichman@richmangreer.com
                Florida Bar No.: 066432
                ADAM M. MYRON
                amyron@richmangreer.com
                Florida Bar No.: 0895121
                JOSHUA L. SPOONT
                jspoont@richmangreer.com
                Florida Bar No.: 53263
                RICHMAN GREER, P.A.
                One Clearlake Center, Suite 1504
                250 Australian Avenue South
                West Palm Beach, FL 33401
                Tel/Fax: (561) 803-3500 / (561) 820-1608
                *Attorneys for Plaintiff*

                - and -



*Lamour v. Uber – Opp. to Renewed Motion to Compel Arb.*
Case No.: 16-21449-CIV-MARTINEZ-GOODMAN
Page 27

STEPHEN J. SCHULTZ
schultz@sbemp.com
Florida Bar No.: 120917
MERRILL, SCHULTZ AND BENNETT,
LIMITED
2240 Fifth Avenue
San Diego, CA 92101
Tel: 619.501.4540
*Attorneys for Plaintiff*

- and -

THOMAS G. SCHULTZ
TSchultz@LSRCF.com
Florida Bar No.: 92860
LSRCF Law, PLLC
1111 Brickell Ave. #2200
Miami, FL 33131
Tel: 305.760.8544
*Attorneys for Plaintiff*

*Lamour v. Uber – Opp. to Renewed Motion to Compel Arb.*
Case No.: 16-21449-CIV-MARTINEZ-GOODMAN
Page 28

## <u>CERTIFICATE OF SERVICE</u>

 I HEREBY CERTIFY that on **December 15, 2016** a true and correct copy of the foregoing, was electronically filed with the Clerk using the CM/ECF filing system and served upon on all counsel of record and/or *pro se* party(ies) on the service list below, either via transmission of Notices of Electronic Filing generated by the CM/ECF filing system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


       */s/ Adam M. Myron*     


### <u>SERVICE LIST</u>
*Lamour v. Uber Technologies, Inc.*
Case No.: 16-21449-CIV (U.S.D.C., S.D. Fla.)

Courtney B. Wilson, Esq.
LITTLER MENDELSON, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, Florida 33131
Telephone: 305.400.7500
Facsimile: 305.603.2552
cwilson@littler.com
kljackson@littler.com
*Attorney for Uber Technologies, Inc.*

